NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ARIZONA REPUBLICAN PARTY, a recognized political party; and
KELLI WARD, a resident of Mohave County, Chairwoman of the Arizona
Republican party, and a registered voter and taxpayer,
*Plaintiffs/Appellants*,

*v.*

ADRIAN FONTES, in his official capacity as Arizona Secretary of State;
LARRY NOBLE, in his official capacity as RECORDER for COUNTY OF
APACHE; DAVID W. STEVENS, in his official capacity as RECORDER for
COUNTY OF COCHISE; PATTY HANSEN in her official capacity as
RECORDER for COUNTY OF COCONINO; SADIE JO BINGHAM, in her
official capacity as RECORDER for COUNTY OF GILA; WENDY JOHN,
in her official capacity as RECORDER for COUNTY OF GRAHAM;
SHARIE MILHEIRO, in her official capacity as RECORDER, for COUNTY
OF GREENLEE; RICHARD GARCIA, in his official capacity as
RECORDER for COUNTY OF LA PAZ; STEPHEN RICHER, in his official
capacity as MARICOPA COUNTY DIRECTOR OF ELECTRONIC
SERVICES AND EARLY VOTING; KRISTI BLAIR, in her official capacity
as RECORDER for COUNTY OF MOHAVE; MICHAEL SAMPLE, in his
official capacity as RECORDER for COUNTY OF NAVAJO; GABRIELLA
CAZARES-KELLY, in her official capacity as ELECTIONS DIRECTOR for
the COUNTY OF PIMA; VIRGINIA ROSS, in her official capacity as
RECORDER for COUNTY OF PINAL; SUZANNE 'SUZIE' SAINZ, in her
official capacity as RECORDER for COUNTY OF SANTA CRUZ; LESLIE
M. HOFFMAN, in her official capacity as RECORDER for COUNTY OF
YAVAPAI; ROBYN STALLWORTH POUQUETTE, in her official capacity
as VOTER SERVICES COORDINATOR for the COUNTY OF YUMA;
STATE OF ARIZONA, *Defendants/Appellees*.

ARIZONA DEMOCRATIC PARTY, DEMOCRATIC SENATORIAL
CAMPAIGN COMMITTEE, DEMOCRATIC CONGRESSIONAL

CAMPAIGN COMMITTEE, DEMOCRATIC NATIONAL COMMITTEE,
Intervenors/Appellees.

No. 1 CA-CV 22-0388
FILED 1-17-2023

_____

Appeal from the Superior Court in Mohave County
No. S8015CV202200594
The Honorable Lee Frank Jantzen, Judge

**AFFIRMED**

_____

COUNSEL

Davillier Law Group, LLC, Phoenix, AZ
By Alexander Kolodin, Veronica Lucero, Roger Strassburg, Arno Naeckel
*Counsel for Plaintiffs/Appellants Arizona Republican Party and Kelli Ward*

Harvard Law School, Cambridge, MA
By Alan Dershowitz
*Pro Hac Vice Counsel for Plaintiffs/Appellants Arizona Republican Party and
Kelli Ward*

Coppersmith Brockelman, PLC, Phoenix, AZ
By D. Andrew Gaona, Kristen Yost
*Co-Counsel for Defendant/Appellee Arizona Secretary of State Adrian Fontes*

States United Democracy Center, Tempe, AZ
Christine Bass
*Co-Counsel for Defendant/Appellee Arizona Secretary of State Adrian Fontes*

Herrera Arellano, LLP, Phoenix, AZ
By Roy Herrera, Daniel A. Arellano, Jillian L. Andrews
*Counsel for Intervenor-Defendants/Appellees Arizona Democratic Party, DSCC,
DCCC, and Democratic National Committee*

Elias Law Group, LLP, Washington, D.C.
By Elisabeth C. Frost, Maya Sequeira, Richard A. Medina, William K.
Hancock
*Pro Hac Vice Counsel for Intervenor-Defendants/Appellees Arizona Democratic
Party, DSCC, and DCCC*

Hemenway & Barnes, LLP, Boston, MA
By M. Patrick Moore, Jr., Jennifer Grace Miller
*Pro Hac Vice Counsel for Intervenor-Defendant/Appellee Democratic National Committee*

Maricopa County Attorney's Office, Phoenix, AZ
By Thomas P. Liddy, Joseph J. Branco, Joseph E. LaRue, Karen J. Hartman-Tellez, Anna G. Critz
*Co-Counsel for Defendants/Appellees Apache, Cochise, Coconino, Gila, Graham, Greenlee, La Paz, Maricopa, Navajo, Pima, Pinal, Santa Cruz, and Yuma County Recorders*

The Burgess Law Group, Phoenix, AZ
By Emily M. Craiger
*Co-Counsel for Defendant/Appellee Maricopa County Recorder*

---

## MEMORANDUM DECISION

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Vice Chief Judge David B. Gass joined.

---

**B A I L E Y**, Judge:

¶1        The Arizona Republican Party ("AZGOP") and its chairwoman Kelli Ward (collectively, "Plaintiffs") filed this case against the Arizona Secretary of State ("the Secretary") and election officials in each of Arizona's fifteen counties ("Counties"), alleging Arizona's mail-in voting laws violate Article 7, Section 1 of the Arizona Constitution ("the Secrecy Clause").  The Secrecy Clause states, "All elections by the people shall be by ballot, or by such other method as may be prescribed by law; Provided that secrecy in voting shall be preserved."  Ariz. Const. art 7, § 1.

¶2        The superior court found Arizona's mail-in voting laws adequately preserve secrecy in voting, denied Plaintiffs' motion for a preliminary injunction, and entered a final judgment dismissing Plaintiffs' complaint.  Plaintiffs appealed.  Because the superior court did not err in finding Arizona's mail-in voting laws preserve secrecy in voting, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶3        In the early days of our republic, government officials were elected by voice vote or the showing of hands. *Burson v. Freeman*, 504 U.S.

3

191, 200 (1992). In this system, voting was "an open, public decision," and voters often faced bribery and intimidation. *Id.* To counter this, most states began using paper ballots to conduct elections. *Id.* But political parties manipulated these ballots by producing their own distinctive, brightly colored ballots to ensure voters cast a ballot for that party. *Id.* The introduction of paper ballots thus did not eliminate corruption and bribery from the electoral process. *Id.* at 200-01.

¶4            In response, many states adopted the "Australian system," which required the state to provide "an official ballot, encompassing all candidates of all parties on the same ticket," along with other measures to preserve secrecy, including the use of polling booths and prohibitions on electioneering around polling locations. *Id.* at 202. When Arizona became a state in 1912, voting by an official, state-provided, secret ballot was the primary voting method throughout the country. *Id.* at 204-05.

¶5            Prior to 1991, when voting by mail, a voter had to be in the presence of an officer authorized to administer oaths, mark the ballot in a manner so that the officer could not see how the person voted, and then seal the ballot. *See* Ariz. Rev. Stat. ("A.R.S.") § 16-548 (1990). But in 1991, the legislature amended these laws to allow *any* voter to vote by mail and removed the requirement that voters fill out and seal their ballots in the presence of an officer authorized to administer oaths. *See* 1991 Ariz. Sess. Laws, ch. 51, § 1. Since then, when filling out their ballot, a mail-in voter must mark the ballot "in such a manner that [the] vote cannot be seen[,] . . . fold the ballot, if a paper ballot, so as to conceal the vote" and securely seal the ballot. A.R.S. § 16-548(A).

¶6            In February 2022, Plaintiffs filed a special action petition with the Arizona Supreme Court, challenging Arizona's mail-in voting laws under the Secrecy Clause. *See* Ariz. R.P. Spec. Act. 7. The court declined special action jurisdiction but noted Plaintiffs could re-file their claim in superior court. Six weeks later, Plaintiffs filed this case in superior court against the Secretary and Counties, alleging Arizona's mail-in voting system violates the Secrecy Clause. Plaintiffs sought a declaratory judgment and injunctive relief.

¶7            The superior court permitted the Arizona Democratic Party ("ADP"), the Democratic Senatorial Campaign Committee ("DSCC"), the Democratic Congressional Campaign Committee ("DCCC"), and the Democratic National Committee ("DNC"), (collectively, "Intervenors"), to intervene as defendants.

¶8 Plaintiffs requested an order to show cause why their requested relief should not be granted and moved for a preliminary injunction to prevent the Secretary and Counties from carrying out and enforcing mail-in voting laws in the 2022 general election. In response, Defendants argued (1) Plaintiffs sought a change in voting laws too close to an election, *see Purcell v Gonzalez*, 549 U.S. 1 (2006); (2) Plaintiffs lacked standing; (3) Plaintiffs' claims were barred by laches; and (4) Plaintiffs' claims failed on the merits.

¶9 In June 2022, after full briefing and oral argument, the superior court denied Plaintiffs' requested relief. The court found Plaintiffs had standing, *Purcell* and laches did not apply, and Plaintiffs' claims failed on the merits because Arizona's mail-in voting laws do not violate the Secrecy Clause. The court consolidated the preliminary injunction hearing with a bench trial on the merits, *see* Ariz. R. Civ. P. 65(a)(2)(A), and finding Plaintiffs' claims failed as a matter of law, entered a final judgment dismissing Plaintiffs' complaint with prejudice. Plaintiffs timely appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I. Plaintiffs' preliminary injunction request is moot.

¶10 As "a matter of prudential or judicial restraint," we generally do not consider moot questions. *Cardoso v. Soldo*, 230 Ariz. 614, 617, ¶ 5 (App. 2012). As Plaintiffs conceded at oral argument before this court, because the 2022 election has been held and certified, their preliminary injunction request is moot. We therefore do not address whether the superior court properly denied Plaintiffs' preliminary injunction request.

### II. Plaintiffs have standing.

¶11 The Secretary and Intervenors claim Plaintiffs lack standing, arguing Plaintiffs allege only generalized grievances, not an actual injury. Whether a party has standing is a question of law we review *de novo*. *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 523, ¶ 11 (2021).

¶12 To establish standing, a party "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Bennett v. Napolitano*, 206 Ariz. 520, 525, ¶ 18 (2003) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

**¶13**        AZGOP, and its chairwoman Ward, must hold AZGOP's primary elections "in the same manner as provided for a general election," meaning they must allow for mail-in voting under the same voting system they claim violates the Secrecy Clause. *See* A.R.S. § 16-401(A). Because Plaintiffs are statutorily required to hold these primary elections in a manner that they allege would violate the Secrecy Clause, they have alleged an injury sufficient to confer standing. Their claimed injury is traceable to the enforcement of mail-in voting laws and would be redressed by their request to enjoin the enforcement of those laws.

### III.    Neither laches nor *Purcell* bar Plaintiffs' claims.

**¶14**        Under *Purcell v. Gonzalez*, 549 U.S. 1 (2006) courts generally do "not alter the election rules on the eve of an election" to prevent "judicially created confusion." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020). At oral argument before this court the Secretary conceded that *Purcell* no longer applies because the 2022 election has passed. We agree *Purcell* has no application here.

**¶15**        The Secretary and Counties also argue the superior court erred in finding laches did not bar Plaintiffs' claims. We review the superior court's determination that the equitable doctrine of laches does not bar a claim for an abuse of discretion. *McLaughlin v. Bennett*, 225 Ariz. 351, 353, ¶ 5 (2010). The "laches doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable delay prejudices the opposing party or the administration of justice." *Id.* (quoting *Lubin v. Thomas*, 213 Ariz. 496, 497, ¶ 10 (2006)). The Secretary and Counties cite no authority suggesting that laches bars a constitutional challenge simply because the challenged laws have been in place for decades. The superior court did not err in finding that laches does not bar Plaintiffs claims.

### IV.    Plaintiffs concede the Arizona Constitution does not require in-person voting.

**¶16**        In their complaint, Plaintiffs argue "in-person voting at the polls on a fixed date in a secret manner is the only constitutional manner of voting in Arizona," and in their opening brief on appeal, they argue "[t]he Arizona Constitution explicitly requires voting in person."

**¶17**        But in their reply brief on appeal, they refined their argument, conceding that voting in person before election day may be constitutional, and argued instead that mail-in voting violates the Secrecy Clause *only* because it takes place without the requirements that "(1) an official be present when absentee voters cast their ballots . . . and (2) that the official

then watch[es] the voter enclose and seal the ballot in an envelope." And at oral argument before this court, Plaintiffs stated, "We're not challenging mail-in voting overall, what we're challenging is the current system of mail-in voting where a restricted zone is not secured around the voter." Thus we address only whether the Arizona Constitution requires a secure restricted zone around a voter who fills in a mail-in ballot.

**V.     Arizona's mail-in voting laws preserve secrecy in voting as required by the Arizona Constitution.**

**¶18**          Though Plaintiffs presented evidence to the superior court of alleged mail-in voting secrecy protection violations, in their briefing on appeal and at oral argument before this court, they concede their challenge is only a facial challenge. To succeed on their facial challenge, Plaintiffs "must establish that no set of circumstances exists under which the [statutes] would be valid." *State v. Arevalo*, 249 Ariz. 370, 373, ¶ 10 (2020) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

**¶19**          We review *de novo* issues of constitutional interpretation. *State v. Mixton*, 250 Ariz. 282, 285-86, ¶ 11 (2021). Plaintiffs have the burden to show Arizona's mail-in voting laws violate the Arizona Constitution. *Kotterman v. Killian*, 193 Ariz. 273, 284, ¶ 31 (1999). "[W]e resolve all uncertainties in favor of constitutionality." *Id.*

**¶20**          When interpreting the Arizona Constitution, "we seek to give terms the original public meaning understood by those who used and approved them." *Matthews v. Indus. Comm'n of Ariz.*, ___ Ariz. ___, ¶ 29, 520 P.3d 168, 174 (2022). This can include looking to "dictionary definitions from the time the provision was adopted." *Id.* at ¶ 33. To resolve any remaining ambiguity, we may examine the provision's history. *See Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 12 (1986).

**¶21**          Plaintiffs argue Arizona's mail-in voting laws violate the Secrecy Clause because the laws do not require officials to secure a restricted zone around a voter who fills in a mail-in ballot. The Secrecy Clause states, "All elections by the people shall be by ballot, or by such other method as may be prescribed by law; Provided that secrecy in voting shall be preserved." Ariz. Const. art 7, § 1.

**¶22**          When the Arizona Constitution was adopted, the definitions of "secrecy" included "the state or quality of being hidden; concealment[.]" *Secrecy*, New Websterian Dictionary, 735 (1912). "Preserve" definitions included "to keep from injury; defend; uphold; save; keep in a sound state[.]" *Preserve*, New Websterian Dictionary, 646. Thus, the Secrecy

7

Clause's meaning is clear: when providing for voting by ballot or any other method, the legislature must uphold voters' ability to conceal their choices. The constitution does not mandate any particular method for preserving secrecy in voting.

**¶23**　　　Arizona's mail-in voting laws preserve secrecy in voting by requiring voters to ensure they fill out their ballot in secret and seal the ballot in an envelope that does not disclose the voters' choices. Section 16-548(A) provides:

> The early voter shall make and sign the affidavit and *shall then mark his ballot in such a manner that his vote cannot be seen*. The early voter shall fold the ballot, if a paper ballot, *so as to conceal the vote and deposit the voted ballot in the envelope provided for that purpose, which shall be securely sealed* and, together with the affidavit, delivered or mailed to the county recorder or other officer in charge of elections of the political subdivision in which the elector is registered or deposited by the voter or the voter's agent at any polling place in the county.

A.R.S. § 16-548(A) (emphasis added).

**¶24**　　　The election officer charged with preparing mail-in ballots must "[e]nsure that the ballot return envelopes are of a type that *does not reveal the voter's selections* or political party affiliation and that *is tamper evident* when properly sealed." A.R.S. § 16-545(B)(2) (emphasis added). And, when opening the envelope containing a mail-in ballot, election officials must "take out the ballot without unfolding it or permitting it to be opened or examined. . . ." A.R.S. § 16-552(F). It is a class two misdemeanor for an election official to "[o]pen[] or permit[] the folded ballot of an elector . . . to be opened or examined previous to depositing it in the ballot box." A.R.S. § 16-1007(2).

**¶25**　　　These statutes ensure that mail-in voters' choices are concealed by requiring voters to mark their ballot so their vote cannot be seen and then to securely seal it in an envelope that does not disclose their vote. After a voter does this, election officials cannot open the ballot to reveal the voter's selection. It must be deposited in the ballot box to be counted. At no point can the voter's identifying information on their ballot envelope be lawfully connected with their vote. These protections are adequate to ensure the preservation of secrecy in voting. The legislature is free to adopt the more stringent requirements urged by Plaintiffs, but it is not constitutionally required to do so.

¶26 Plaintiffs point to *Burson v. Freeman*, 504 U.S. 191 (1992), as support for their contention that preserving secrecy in voting requires that an official be present to ensure voters mark their ballot in secret. In *Burson*, the United States Supreme Court held a Tennessee law that prohibited electioneering within 100 feet of a polling place entrance did not violate the First Amendment to the U.S. Constitution. 504 U.S. at 211. The court stated, "The only way to preserve the secrecy of the ballot is to limit access to the area around the voter. Accordingly, we hold that *some* restricted area around the voting area is necessary to secure the State's compelling interest." *Id.* at 207-08 (footnote omitted). Plaintiffs contend this language means the Secrecy Clause requires an official to be present to ensure a restricted zone around mail-in voters as they mark their ballots. *Burson*, however, does not support Plaintiff's argument.

¶27 *Burson* held only that a state statute prohibiting electioneering within 100 feet of polling places does not violate the First Amendment of the U.S. Constitution. *Id.* at 211. That holding does not suggest—let alone direct—how we interpret the Arizona Constitution's Secrecy Clause. Nor is there any suggestion that *Burson* considered mail-in voting. And to the extent the Supreme Court in *Burson* opined on best practices for voting security, its suggestions are dicta and unpersuasive in this case. *Burson* does not instruct application of the Secrecy Clause here.

¶28 Plaintiffs argue that though Arizona law preserves secrecy in voting at polling locations, § 16-1018 fails to preserve secrecy in mail-in voting. Plaintiffs contend that because mail-in voters may photograph their ballot and post it on the internet, Arizona laws do not preserve secrecy in voting. Plaintiffs point to § 16-515(G), which states, "Notwithstanding § 16-1018, a person may not take photographs or videos while within the seventy-five foot limit" around polling locations. A.R.S. § 16-515(G). Section 16-1018 makes it a class two misdemeanor for a person to "[s]how[] another voter's ballot to any person after it is prepared for voting in such a manner as to reveal the contents, except to an authorized person lawfully assisting the voter," but "[a] voter who makes available an image of the voter's own ballot by posting on the internet or in some other electronic medium is deemed to have consented to retransmittal of that image and that retransmittal does not constitute a violation of this section." A.R.S. § 16-1018(A)(4).

¶29 We do not read § 16-1018(A)(4) as failing to preserve secrecy in mail-in voting. Section 16-1018(A)(4) merely provides a defense to the crime of showing another's ballot to any person after it is prepared. The defense applies when a person shows another voter's ballot if the voter who

filled out that ballot posted the image online. And the legislature's decision not to prohibit a mail-in voter from showing her own marked ballot to another, whether in person or online, does not violate the Secrecy Clause because the legislature has commanded mail-in voters to "mark [her] ballot in such a manner that [her] vote cannot be seen." A.R.S. § 16-548(A); *State v. Cassius*, 110 Ariz. 485, 487 (1974) ("Where statutes in [p]ari materia are in apparent conflict, they should be construed in harmony so as to give force and effect to each.").

**¶30** Finally, Plaintiffs argue the superior court erred in relying on *Miller v. Picacho Elementary Sch. Dist. No. 33*, 179 Ariz. 178 (1994), to conclude that Arizona's mail-in voting statutes preserve secrecy in voting. In *Miller*, our supreme court observed that a law that required election officers to mail the absentee ballot to the requesting voter and prohibited anyone other than that voter from possessing the ballot advanced the constitutional goal of secrecy in voting. 176 Ariz. at 180. The superior court here properly noted our supreme court in *Miller* observed that mail-in voting laws further the goal of secrecy. But the superior court did not rely solely on *Miller* to find that mail-in voting laws constitutionally preserve secrecy in voting. We find no error in the superior court's analysis.

**¶31** Arizona's mail-in voting statutes ensure that voters fill out their ballot in a manner that does not disclose their vote and that voters' choices are not later revealed. The superior court did not err in finding that these protections are sufficient to preserve secrecy in voting.

## VI. We do not award attorneys' fees and costs.

**¶32** Plaintiffs request attorneys' fees and costs under the private attorney general doctrine and A.R.S. §§ 12-2030 and -348. Under the private attorney general doctrine, "a party who has vindicated a right that (1) benefits a large number of people, (2) requires private enforcement, and (3) is of societal importance" may be awarded fees. *Ansley v. Banner Health Network*, 248 Ariz. 143, 153, ¶ 39 (2020). Plaintiffs have not vindicated a right and are therefore not entitled to fees under the private attorney general doctrine. Because Plaintiffs are not the prevailing party, they are not entitled to an award of fees under § 12-2030 or § 12-348.

## CONCLUSION

¶33     We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA